UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMARKIUS ROBY, | : <br> : <br> : Civil Action No. <br> : <br> : **PLAINTIFF REQUESTS A** <br> : **TRIAL BY JURY** <br> : <br> : <br> : <br> : <br> : **COMPLAINT** <br> : <br> : |
| Plaintiff, | |
| -vs- | |
| LINCOLN UNIVERSITY - OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION; | |
| Defendants. | |

Plaintiff, TAMARKIUS ROBY ("Plaintiff" and/or "Mr. Roby") by and through his undersigned counsel hereby files this Civil Action Complaint against Defendant LINCOLN UNIVERSITY - OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, and upon information and belief avers the following:

## NATURE OF THE CASE

Plaintiff complains of disability discrimination, failure to accommodate his disability, wrongful termination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.* ("ADA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951 *et seq.*, and seeks damages to redress injuries Plaintiff suffered as a result of discrimination and retaliation due to his disability.

## JURISDICTION AND VENUE

1. This action involves a question of federal law under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

1

2. This Court has supplemental jurisdiction over the forthcoming Commonwealth causes of action under the PHRA, as they arise from the same nucleus of operative fact.[1]

3. Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the county of Chester within the Commonwealth of Pennsylvania where the discrimination occurred.

4. Around March 11, 2025, Plaintiff filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and dual filed with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation.

5. Around July 17, 2025, the EEOC issued Plaintiff a Notice of Right to Sue pertaining to his claims arising under federal law.

6. Plaintiff has therefore exhausted his administrative remedies pertaining to his federal claims under the ADA.

7. Plaintiff now files this Complaint within ninety (90) days of his receipt of the Notice of Right to Sue from the EEOC.

**PARTIES**

8. Plaintiff TAMARKIUS ROBY ("Plaintiff" or "ROBY") is an adult individual male who resides in the State of New Jersey.

9. Defendant LINCOLN UNIVERSITY - OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION ("Defendant" and/or "LINCOLN") was and is a domestic nonprofit corporation created under and authorized to do business pursuant to the laws of the Commonwealth of Pennsylvania.

---

[1] As Plaintiff's claims under the Pennsylvania Human Relations Act will not be ripe for inclusion in his Complaint until one year from the filing of Plaintiff's Charge of Discrimination, Plaintiff reserves the right to amend this Complaint to include any and all such claims once he is able to do so.

10. At all times material, Defendant LINCOLN, as part of the Commonwealth of Pennsylvania System of Higher Education, operated and continues to operate a public university in the county of Chester, located at 1570 Baltimore Pike, Lincoln University, PA 19352 (the "Main Campus.")

11. At all times material, Defendant employed Plaintiff at its Main Campus.

12. At all times material, Plaintiff was qualified for his position with Defendant.

13. At all times relevant to this complaint, Defendants employed more than twenty people and were subject to federal antidiscrimination statutes including the ADA.

## MATERIAL FACTS

14. Around July 2018, Plaintiff ROBY began working for Defendant LINCOLN, initially as a Veterans Affairs Coordinator, and was later promoted to the position of inaugural Director of Military and Veteran Services.

15. At all times, Plaintiff excelled in his position and fulfilled the terms and conditions of his employment.

16. Plaintiff is a United States military veteran who has numerous service-related disabilities affecting his back and hip, and has a disability rating of 100% based on applicable U.S. Department of Veterans Affairs determinations.[2]

17. At all times material, Plaintiff was able to perform his work for Defendant with reasonable accommodations.

18. Following a medical procedure in September 2023, Plaintiff requested and received an accommodation from Defendants to work from home three days out of the week, while working

---

[2] This does not mean that Plaintiff was or is unable to work. Importantly, Plaintiff is not qualified for "Individual Unemployability" by the Department of Veterans Affairs, and therefore was fully qualified for his position with Defendant with reasonable accommodations (as well as for future employment opportunities).

3

the other two days in the office, along with a specific desk and chair with which to work from home that helped to alleviate the symptoms of his disabilities.

19. Plaintiff continued to work at a high level following his September 2023 medical procedure.

20. Around August 12, 2024, Plaintiff became aware that he would need to undergo an additional surgical procedure on his hip, and accordingly submitted a request for short-term disability leave through Lincoln Financial Group, Defendant's FMLA and Disability Leave carrier.

21. On August 19, Defendant's Human Resources department advised Plaintiff that they had received his submission to Lincoln Financial, and confirmed that he had requested leave from September 19 to December 19, 2024.

22. Defendant's Human Resources department advised Plaintiff in the same letter that as his FMLA eligibility was exhausted, he would need to request "Discretionary Unpaid Leave" from the university for his procedure, and that he would need to formally request such leave through the university no later than August 30, 2024.

23. The letter further advised Plaintiff that he could apply for short-term disability leave through Lincoln Financial if his absence was expected to last longer than 30 days, which Plaintiff had already advised was the case.

24. Plaintiff thereafter submitted the requisite leave request to Defendant, noting therein that he was taking leave for his own serious medical condition and that it was requested as Discretionary Unpaid Leave.

25. Around August 30, 2024, Defendant's Human Resources department confirmed to Plaintiff that they had received his official leave request pertaining to his leave from September 19 to December 19, 2024.

26. Plaintiff also received confirmation from his surgeon's office that his pertinent medical documents and physician's certification regarding the upcoming procedure had been forwarded to and received by Lincoln Financial as of August 29, 2024.

27. The documentation from Plaintiff's surgeon outlined the details of Plaintiff's procedure, his expected recovery time (12 weeks), his physician-ordered restrictions and timing of the same following the procedure, the amount of Plaintiff's necessary leave, and Plaintiff's full-time return to work date (December 19, 2024).

28. On September 19, 2024, Plaintiff accordingly began his leave and underwent his scheduled medical procedure.

29. Following his procedure, Plaintiff ensured to send to Lincoln Financial his post-operative report dated September 19-20, his followup visit report dated October 4, and his treatment plan explanation dated October 10 which once again detailed his restrictions during his recovery.

30. Plaintiff subsequently had an additional procedure for nerve decompression completed on November 12, 2024.

31. Plaintiff also remained in contact with Human Resources during the pendency of his leave.

32. On November 26, 2024, while still on leave and continuing to recover from his procedure, Defendant provided Plaintiff with a "Job Abandonment Notice" alleging that he had failed to report back to work on November 22, 2024 after his Discretionary Unpaid Leave had allegedly ended on November 21.

5

33. Highly concerned by the letter, Plaintiff immediately attempted to contact Jake Tanksley ("Tanksley"), Defendant's Vice President of Human Resources whose signature appeared on the letter, but was unable to contact him.

34. Plaintiff accordingly contacted his Divisional Vice President, Dr. Dorcas Colvin ("Dr. Colvin"), who advised that she was unaware of Defendant's actions, and that she was aware of his medical procedure and ongoing leave. Dr. Colvin also advised Plaintiff to follow up with Human Resources and that she would do so as well.

35. In the process of doing so, Plaintiff realized that he had erroneously forgotten to formally re-apply for the recurring next 30 days of Discretionary Unpaid Leave through the Human Resources office in the preceding month, as he was still in the midst of his recovery from major surgery and experiencing the side effects on his memory of numerous prescribed medications during this time.

36. Despite that, as noted above, Plaintiff's previous communications with and documents forwarded to both Human Resources and Lincoln Financial had made it <u>abundantly</u> clear that Plaintiff's leave was requested for September 19 through December 19, 2024. Furthermore, Plaintiff had ensured that Human Resources was fully aware of the expected period of his leave in prior communications.

37. However, nobody from Defendant (whether in Human Resources or otherwise) attempted to contact Plaintiff prior to abruptly issuing him the "Job Abandonment" notice.

38. The following day, Plaintiff accordingly spoke with Rochelle Gray, Defendant's Associate Vice President of Labor & Employee Relations, who advised him to formally request a meeting with Human Resources regarding the alleged job abandonment.

39. Plaintiff did so, but received an auto-reply from Tanksley's email.

40. On December 6, 2024, Plaintiff again followed up with Dr. Colvin, who advised him that Althea Holton ("Holton"), a Senior HR Generalist for Defendants, would be in touch with him, and that he needed to submit "updated medical with a specific return to work date from your doctor. Not the same note previously supplied with a date range." In the same text message, Dr. Colvin assured Plaintiff that "HR will sort it out to extend leave."

41. Notably, each and every one of Plaintiff's prior medical documents already submitted to both Defendant and Lincoln Financial had specified his firm return to work date of December 19, 2024, and had been clear about Plaintiff's leave spanning the timeframe of September 19 to December 19.

42. Accordingly, once again, on that same day Plaintiff provided his medical documentation, this time directly to Holton via email, which noted his specific return to work date of December 19, 2024. Plaintiff also ensured to note that in the body of his email containing the documentation.

43. The following Monday, Holton replied to Plaintiff with yet another form for him to have his physician complete, requesting that he provide the "fitness for duty form…with a firm return to work date" by the coming Friday, December 13, which Plaintiff acknowledged.

44. Plaintiff accordingly forwarded the latest requested form to his physicians, and provided the first response that he obtained from his pain management physician to Holton via email on December 10.

45. On that form, Plaintiff's physician noted that while Plaintiff would continue to require accommodations of three days of remote work weekly at least through February 2025 (the same accommodation that Plaintiff had received without issue prior to undergoing his procedure), he was <u>not</u> "totally medically incapacitated."

7

46. Plaintiff's physician further affirmed via the same form that Plaintiff had no restrictions on the number of days or hours that he could work per week.

47. Indeed, Plaintiff was wholly ready and able to return to work on his originally indicated date of December 19, 2024, which he had *repeatedly* provided to Defendants. At no time did Plaintiff ever advise that his return to work date was uncertain or that he required indefinite leave.

48. Despite that, a mere three days before Plaintiff had planned on returning to work, Defendants (via an email from Tanksley) advised Plaintiff on December 16, 2024 that while "we have received your request to meet and discuss your termination of employment," "the University's position regarding job abandonment remains unchanged. The decision is final and will not be revisited."

49. Accordingly, Defendants terminated Plaintiff as of November 26, 2024, and confirmed their decision to do so on December 16.

50. Defendants accordingly unlawfully terminated Plaintiff in violation of the Americans with Disabilities Act due to his requirement of medical leave to recover from his necessary medical procedure.

51. Defendants further failed to engage in the interactive process with Plaintiff in unilaterally deciding to terminate him rather than discuss any potential workplace accommodations.

52. Plaintiff was repeatedly targeted for adverse action including termination due to Plaintiff's membership in a protected class based upon disabilities and due to Plaintiff's requests for accommodation in the workplace.

53. As a result of Defendant's conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

54. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

56. Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

57. Plaintiff has further experienced severe emotional and physical distress.

58. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant, jointly and severally.

59. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

60. The above are just some of the examples of the discrimination and retaliation to which Defendants subjected Plaintiff.

61. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

### AS A FIRST CAUSE OF ACTION FOR DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

62. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this complaint as fully as if they were set forth at length.

63. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA") prohibits discrimination on the basis of a disability.

64. Plaintiff is an individual male who suffers from a chronic disability.

65. Defendants unlawfully discriminated against Plaintiff in violation of the ADA.

66. Plaintiff makes claims for all damages available to him as a result of the Defendant's discrimination.

### AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

67. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this complaint as fully as if they were set forth at length.

68. The Americans with Disabilities Act of 1990 prohibits retaliation against an employee who engages in a protected activity.

69. Plaintiff engaged in protected activity when he repeatedly requested reasonable accommodations from Defendant.

70. Defendants retaliated against Plaintiff by failing to accommodate his disabilities and instead terminating his employment.

71. Plaintiff makes claims for all damages available to him as a result of Defendant's unlawful retaliation.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, including but not limited to, all emotional distress,

back pay, front pay, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.


Dated: July 21, 2025

                                      **FREUNDLICH & LITTMAN, LLC**
*Attorneys for Plaintiff*

By: */s/ Nathaniel N. Peckham, Esq.*
Nathaniel N. Peckham, Esq.
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
F: (215 545-8510
E: *nathaniel@fandllaw.com*